72 U.S. 318
 18 L.Ed. 489
 5 Wall. 318
 DWYER
v.
DUNBAR.
 December Term, 1866
 
 ERROR to the District Court for the Eastern District of Texas, the case being thus:
 William Dunbar, assignee of George C. Dunbar, brought suit against T. A. Dwyer, on certain notes given by the said Dwyer. Dwyer, who had other creditors, and had become embarrassed, set up as a defence, that after the maturity of the notes, one Smyth, by W. Dunbar's authority and acting for him, had made and carried into effect a general settlement of his, Dwyer's, indebtedness to his other creditors, and to Dunbar, and had signed and given to him an acquittance, as follows:
 'Received of T. A. Dwyer, $35,500 in merchandise, in full for the annexed amounts to date, which amount includes the amount of William Dunbar, assignee of George Dunbar, whose power of attorney I do not hold, but whose agent said that William Dunbar was willing to do what the balance of New York creditors were. In case said Dunbar declines acceptance of the above composition, the pro rata due him is to be held subject to the order of said Dwyer.'
 The defence set up further that before this receipt was given, the plaintiff, W. Dunbar, by a letter dated on the 23d of May, 1856, and written and signed and sent to the defendant, Dwyer, by one J. T. Ray, acting for and by the authority of him, Dunbar, had authorized him, Dwyer, to make the settlement set forth in the receipt, and had thereby approved it in advance. And it averred that Dunbar had not declined acceptance of the settlement, &c., but, on the contrary, had ratified the same.
 On the trial, the notes having been put in evidence, the defendant offered a deposition of Smyth, to which was attached a letter written by Smyth himself, some time previously, to one Charles Russell, an agent of Dwyer. This letter professed to give an account of the assent of Dunbar to the compromise set up; spoke of a letter 'from Dunbar to Dwyer, shown me by the latter,' and which Smyth stated that he regarded as 'the authority of Dwyer to adjust Dunbar's claim on the same basis that the other claims were arranged.'
 To the same deposition was attached, also, the letter of Ray. This letter ran thus:
 NEW YORK, May 22, 1856.
 T. A. DWYER, ESQ.
 DEAR SIR: Yours of April 26th has been received. Mr. Dunbar, the assignee, being absent at the time, I could not join with the other creditors in their arrangements without consulting him. Since then I have seen Mr. Dunbar. He is disposed to arrange your indebtedness the same as other creditors.
 Respectfully,
 J. S. RAY,
 For W. DUNBAR, assignee of G. C. Dundar.
 The deposition to which these letters were attached, after stating that at a meeting of Dwyer's creditors, sundry of them nominated him, Smyth, attorney to adjust their claims against Dwyer, and that among those who came to the meeting was a person 'who represented himself as appearing for Dunbar,' and who stated that Dunbar 'was willing to do what other creditors were,' and that the other creditors had acceded to the settlement made—went on to say in reference to the letter of Smyth above referred to (this being all, however, which it said in reference to it):
 'The letter of this affiant to Charles Russell, was written in reply to a letter of said Russell, wishing to know the circumstances respecting the settlement made in the Dunbar claim by me.'
 The admission of the letter to Russell being objected to, on the ground that Smyth had nowhere stated in his deposition, that what he said in his letter was true, the court below excluded the letter.
 The defendant then read the deposition, as also, Ray's letter attached; and read the power of attorney of the other creditors to Smyth, to compound and compromise things with Dwyer; Dwyer's receipt of the $35,000 merchandise; and after reading these, and a deposition of one Green, who testified that he had understood from the representatives of William Dunbar, as also from George Dunbar himself, that Dunbar was a party to the arrangement—offered in evidence a deposition from Russell. The deposition ran thus:
 'While acting as the agent of T. A. Dwyer, the defendant, in June, 1856, I received a number of letters, among which there was one addressed to Mr. Smyth from Mr. Ray, agent of Mr. Dunbar, which I forwarded to Mr. Smyth. The contents of said letter were, to the best of my recollection, in substance as follows: 'Mr. Dunbar has returned to New York, and after conversing with him relative to the Dwyer claim, he says, any settlement you make with Dwyer will be satisfactory to him."
 To this deposition the plaintiff objected that it did not show that the letter of Ray, mentioned in it, was sent by the plaintiff's authority, and that therefore the deposition was irrelevant. And it was accordingly excluded.
 Ray himself then testified that he had been employed by William Dunbar, assignee of George Dunbar, to assist him in settling the indebtedness of the said George; that at the meeting he stated that he was present for W. Dunbar, assignee; that he had written the letter already read as his; that the letter was written by him (Ray) on his own responsibility, and without consulting Dunbar at all; and that Dunbar expressed dissatisfaction with the settlement made by Smyth, so soon as made known to him.
 On this case the defendant asked the court to charge——
 'That if the jury find that Ray was permitted by Dunbar, and, with his knowledge, to act for him and represent him in his business; and find also that Ray, in the name of Dunbar, did authorize Smyth to settle with the defendant Dwyer, then Dunbar will be bound by such act of Ray, notwithstanding that Dunbar may not have expressly authorized said Ray to do so, or may have disapproved of said act afterwards.
 'That, if any person publicly acts with the knowledge of another, and without objection, as the general agent or manager for that other, such principal will be bound by the act of such agent, although he may not approve of the particular acts of such agent.'
 But the court refused thus to charge, and charged:
 'That to bind the plaintiff by the acts of Smyth, the authority of Dunbar to Smyth must be proved.
 'That the representations of any person not proved to have been authorized by Dunbar, are not evidence against him.
 'That the power of attorney is not evidence against Dunbar, unless signed by him.
 'That if the jury find that the defendant executed and delivered the notes, and that he has not paid the same, they will find for the plaintiff.
 'That to bind Dunbar by the compromise, the defendant must prove an acceptance by Dunbar of the settlement.'
 Verdict and judgment having been entered for the plaintiff, the correctness of the court's action in excluding the testimony excluded, and in charging and refusing to charge as it did, were the matters now before the court on bill of exceptions taken.
 
 Mr. Carlisle, for the plaintiff in error:
 
 1. It appears, by Ray's deposition, that he was employed by William Dunbar as the assignee of George, in the capacity of agent to assist him in settling up the indebtedness of George; and that on the meeting of Dwyer's creditors Ray represented and was present for W. Dunbar. Green deposes, in effect, to the fact that Dunbar was a party to the arrangement that Smyth should settle the claims of the New York creditors against Dwyer; and Ray himself deposes as to the letter of May 22, 1856, written by him to Dwyer. In this state of the evidence the court erred in excluding Russell's deposition. Conceding that whether there was sufficient proof of the agency to warrant the admission of the deposition was a preliminary question for the court to determine, it is insisted that here the proof was sufficient.[1] The deposition should have been read so soon as there was evidence of authority or acquiescence sufficient to be weighed by the jury.[2]
 2. The court erred in excluding Smyth's letter from the jury. His agency being proved by evidence aliunde, the letter does not fall within the rule which excludes res inter alios acta, but is to be regarded as Smyth's act and the defendant's voucher;[3] or as so illustrating and characterizing the principal fact as to constitute the whole one transaction. It was necessary to exhibit the principal fact in its true light and give it its proper effect.[4]
 3. The court erred in not giving the instructions asked by defendant, and also erred in instructing the jury, on plaintiff's motion, that to bind Dunbar by the compromise, defendant must prove an acceptance by Dunbar of the settlement. There is a wide distinction between general and particular agents. In the former case the principal may be bound by his agent's acts, though exceeding his authority.[5]
 4. The court erred in instructing the jury, on the plaintiff's motion, to find for him if they should find from the evidence that the defendant executed and delivered the notes and had not paid the same.[6] The law, with respect to defences founded on compositions between a debtor and his creditors, appears not to have been distinctly defined until the case of Good v. Cheesman.[7] It used to be sometimes laid down that a right of action once vested could only be barred by a release or by accord and satisfaction. But since the decision of that case the law has been regarded as settled that a composition agreement by several creditors, although by parol, so as to be incapable of operating as a release, and although unexecuted so as not to amount in strictness to a satisfaction, will be a good answer to an action by a creditor for his original debt, if he accepted the new agreement in satisfaction thereof; and that for such an agreement there is a good consideration for each creditor, viz., the undertaking of the other compromising creditors to give up a part of their claim.[8]
 Mr. Justice SWAYNE delivered the opinion of the court.
 
 
 1
 The suit was founded upon two promissory notes executed by Dwyer to George C. Dunbar, and by him indorsed to the defendant in error, who was the plaintiff in the court below.
 
 
 2
 Dwyer, in that court, set up, as a defence to the action, that he had made a compromise and composition with his creditors, and that the plaintiff was a party to the arrangement and bound by it. The plaintiff denied that he was in anywise a party to the agreement.
 
 
 3
 The cause was tried by a jury, and a verdict and judgment were rendered for the plaintiff. Upon the trial, Dwyer took exceptions to the ruling out of certain testimony which he offered, and to the refusal of the court to give instructions which he submitted.
 
 
 4
 A bill of exceptions was taken, setting forth these rulings, and they are relied upon in this court to reverse the judgment.
 
 
 5
 We will consider them in the order in which they are presented in the record.
 
 
 6
 1. The rejection of the letter of Smith. The letter, of itself, was clearly not evidence. There being no proof of the truth of its contents, it was within the definition of res inter alios acta. It was simply a narrative to a third person of a past transaction, in relation to which the writer was a competent witness, and gave his deposition. All that he says upon the subject of the letter is as follows:
 
 
 7
 'The letter of this affiant to Charles Russell was written in reply to said Russell wishing to know the circumstances respecting the settlement made of the Dunbar claim by me. This affiant is not acquainted with J. S. Ray or his signature.'
 
 
 8
 The letter was properly excluded from going to the jury.
 
 
 9
 2. The ruling out of Russell's deposition. This deposition was offered to prove the contents of the letter from Ray. The evidence was entirely secondary in its character. Without the excluded letter there was no foundation for its introduction. The ruling of the court was correct.
 
 
 10
 3. The instructions asked by the defendant below to be given to the jury were not called for by the facts of the case as disclosed in the evidence. Under the circumstances, they were abstractions. They had no practical application, and the court was not bound to give them.
 
 
 11
 The instruction given, which was complained of, was in conformity with the practice of the courts of the United States, when a clear case is made out by the plaintiff and no defence, or only one clearly invalid, is shown by the defendant. The court below proceeded upon this principle, and as the case is disclosed in the bill of exceptions, did not err in its application.
 
 The judgment below is
 
 12
 AFFIRMED WITH COSTS.
 
 
 
 [1]
 United States v. Gooding, 12 Wheaton, 469-70; American Fur Co. v. United States, 2 Peters, 358; Brockelbank v. Sugrue, 5 Carrington & Payne, 21.
 
 
 [2]
 Cliquot's Champagne, 3 Wallace, 140; Philadelphia, &c., Railroad Co. v. Howard, 13 Howard, 333; Barreda v. Silsbee, 21 Id. 165; Law v. Cross, 1 Black, 538-9.
 
 
 [3]
 Hunter v. Campbell, 1 Spear, 55; Wilkinson v. Candlish, 5 Welsby, Hurlstone & Gordon, 91.
 
 
 [4]
 Beaver v. Taylor, 1 Wallace, 642; Allen v. Duncan, 11 Pickering, 308; Law v. Cross, 1 Black, 539.
 
 
 [5]
 Whitehead v. Tuckett, 15 East, 408; Todd, &c., v. Robinson, Ryan & Moody, 217; Gillman, &c., v. Robinson, 1 Carrington & Payne, 642; Andrews v. Kneeland, 6 Cowan, 357; Jeffrey v. Bigelow, 13 Wendell, 520.
 
 
 [6]
 Bradley v. Gregory, 2 Campbell, 383; Boothby, &c., v. Sowden, 3 Id. 175; Cork v. Saunders, 1 Barnewall & Alderson, 46; Good v. Cheesman, 4 Carrington & Payne, 513; Seager, &c., v. Billington, 5 Id. 456; Fellows v. Stevens, 24 Wendell, 300.
 
 
 [7]
 4 Carrington & Payne, 513.
 
 
 [8]
 Williams, J., in Boyd v. Hind, 1 Hurlstone & Norman, 947.